UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| SANDRA WILLIAMS, | ) | CASE NO. 5:06 CV 2543 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| OHIO BUREAU OF WORKERS' | ) | AND ORDER |
| COMPENSATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

Pro se plaintiff Sandra Williams filed the above-captioned in forma pauperis action against the Ohio Bureau of Workers' Compensation (OBWC), OBWC employees: Anita Coughlin William Barber, Frederick Schnitzpahn, Steven Johnson, Gary O'Neil, Joseph Rubino, Mellany Dane, and Elise Schorr, the Industrial Commission of Ohio (ICO), ICO employees: Milutin Zlojutro, Kenneth Krol, and B. Smith, the Ohio Civil Rights Commission, and SEIU/1199 Union. Asserting this court's jurisdiction pursuant to 42 U.S.C. §1983, Ms. Williams alleges that the defendants "orchestrated an indictment for acts she did not commit and terminated her employment" in retaliation for filing a complaint with the Ohio Civil Rights Commission and because of her age and request for disability benefits.

*Factual Background*

Ms. Williams alleges that she started working for the Ohio Industrial Commission Rehabilitation Division on or about August 8, 1988.  Almost eighteen years after her employment commenced with what would later become the OBWC, Ms. Williams was injured on June 8, 2000 while working as an Industrial Rehabilitation Case Management Specialist for the OBWC in Akron, Ohio.

At some point after the injury, Ms. Williams filed a Workers' Compensation claim.  Medical benefits were allegedly approved for a Lumbar Sprain, L4-L5 Herniated Disc and Sciatica.  On September 30, 2003, Ms. Williams "experienced an exacerbation of her injury" (Comp. at ¶ 6) and her physician recommended that she take time off from work.  She again applied for Workers Compensation benefits, including medical and temporary total disability compensation.

A letter from the OBWC Director of Personnel, dated November 5, 2003, was received by Ms. Williams at her place of residence.  In the letter, she was advised that:

> the Akron Service Office merged with the Canton Service Office effective November 3, 2003.  The office is now located in Canton at 400 Third St.  S.E. and your headquarter county will change from Summit to Stark.  Please sign the attached Consent for Headquarter County Change form and return as soon as possible to BWC Personnel, Attn: Dee Seidenschmidt, 30 W. Sprint St. L6, Columbus, Oh 43215.
> \* \* \*
> After your disability has ended and you return to work you will be required to report to the Canton Service Office at the address listed above.

(Comp. at ¶ 7.)  For reasons not set explained in her complaint, Ms. Williams states that she declined to sign or return the consent form.

The OBWC directed Ms. Williams to be seen by Dr. Steven Cramer for an

independent medical examination in January 2004. After examining Ms. Williams, Dr. Cramer opined that "[w]hile possibly not available to her, partial at home work using a computer-based system for case management can be performed . . . At most she is capable of a maximum of four hours a day of sedentary activity relative to work activities, which include transportation time." (Comp. at ¶ 9.)

One month after the referral to Dr. Cramer, Ms. Williams's case was sent to the Fraud Department by Elise Schorr. Presumably in support of her decision to send the case to the OBWC Fraud Department, Ms. Schorr stated:

> On or about late February 2004, Team Leader Mellany Dane advised me that the employees in the Canton Service Office were complaining that Sandra Williams, who had been out with a Worker's Compensation injury for some time, was working with Mary Kay and selling products while out on leave. . . . . Since I was aware that employees are not permitted to work while being on leave and collecting Worker's Compensation benefits, I had no choice but to refer this matter to OBWC's Internal Affairs Department so they could determine if these allegations were true[1].

(Comp. at ¶ 10.) Shortly after this referral, the team leader Mellany Dane started calling Ms. Williams at home each morning. Each time she called, Ms. Williams states that she advised Ms. Dane that her physician was not prepared to release her to return to work.

At some point in June 2004, Ms. Williams was directed to see Dr. Karl Metz for another independent medical examination. It was the stated opinion of Dr. Metz that:

> Ms. Williams is not capable of returning to her former work position as a [sic] industrial disability management

---

[1]Ms. Williams argues that the defendants were improperly investigating her because "she had not shared or informed anyone in the Canton Service Office the nature or reasons she was off work or on disability leave." (Comp. at ¶ 11.)

3

> coordinator because of the prolonged driving, sitting, standing requirements etc. She is in my opinion, capable of sedentary to light activities which would preclude her from sitting or standing longer than 1 to 2 hours at a time. . . . I concur with Dr. Kramer's recommendations on page 5 of his independent medical evaluation report of 01/29/2003 in that Ms. Williams is 1 hour from her work which exceeds her driving tolerance at this juncture.

(Comp. at ¶ 13.) In spite of this medical assessment, Ted Becker contacted Ms. Williams in August 2004 and allegedly threatened that she would be fired if she did not return to work in the Canton office. When she did return to work, Ms. Willams complains that she was seated in an area segregated from the majority of her team. She also recognized that team leaders and managers were following her when she left the building to go on breaks or even at times when she was traveling away from her private residence.

A supervisor advised Ms. Williams that she needed to complete a C-140 Form in order to be compensated "for hours not worked. The C-140 is one of the forms the Defendant used to accuse the Plaintiff of fraud." (Comp. at ¶ 17.) Ms. Williams then claims that the "[d]efendant made pay errors which adversely affected the Plaintiff." Id. Although she states that she was not able to determine what the discrepancies were, her team leader advised that she was not entitled to use sick leave hours beyond the doctors' restrictions "despite having accumulated over the years about 180 hours of unused sick time." (Comp. at ¶ 19.) To compensate for this decrease in her wages, Ms. Williams approached her physician to request authorization for additional hours, despite the fact that she was "in excruciating pain." [2]

In October 2004, Ms. Schorr escorted Ms. Williams out of her workplace and across

---

[2]Ms. Williams does not indicate whether her request was denied, or that there was any concern expressed by her physician based on any medical restrictions.

the street to meet with fraud investigators. The investigators asked her questions about a car for which she was making payments and checks they had seized from a joint bank account Ms. Williams shared with her son and husband.

Ms. Williams filed a charge with the Ohio Civil Rights Commission (OCRC) on November 2, 2004 wherein she alleged discrimination based on race, gender, age, disability and retaliation.[3] She argued that there were "several people in the office who are actively running (selling) a business throughout the day. The Team Leaders, Assistant Service Office Manager and Office Manager are all aware of this but business goes on as usual for these people." (Comp. at ¶ 22.) In response, the OBWC provided the OCRC with a copy of its Fraud Policy and an unsigned copy of Ms. Williams's position description, which did "not correspond to the Plaintiff's job of Industrial Rehabilitation Case Manager." Without explaining the relevance, Ms. Williams complains that the OBWC provided a copy of the Fraud Policy dated 12/08/2004, which went into effect when she filed her charges of discrimination. In response to the quoted policy, which "speaks of zero tolerance toward fraudulent or dishonest activity by OBWC employees," Ms. Williams contended that other individuals in the Canton Service Office were running personal businesses on company time. The OBWC, through Joseph Rubino, stated that, "[e]ven assuming arguendo that these allegations are true, which they are not, these individuals would not be similarly situated to Ms. Williams." (Compl. at ¶ 26.)

Ms. Williams maintains that the OBWC fraud policy was applied in a discriminatory manner. She claims that "non-disabled employees are permitted to sell personal products during

---

[3] There are no facts alleged in the complaint which support or address any allegations Ms. Williams may have raised relative to the charges she filed with the OCRC.

business hours and are not investigated per the fraud policy and are not disciplined for these offenses." (Compl. at ¶ 27.) Despite plaintiff's contention, "the OBWC filed a motion with the Industrial Commission requesting an overpayment in the claim, along with a finding of fraud despite information from the fraud investigation which clearly showed the Plaintiff was never involved in any type of fraudulent activity." (Compl. at ¶ 23.) The OBWC also filed fraud charges with the State of Ohio in February 2005. She states that the Attorney General dismissed the indictment, however on June 23, 2005. In spite of the dismissal of these charges, Ms. Williams complains that the State of Ohio still refused to rehire her.

On behalf of the OBWC, Mr. Rubino advised the OCRC that "Ms. Williams was terminated because she was gainfully employed while receiving TTC and because she misrepresented her employment status/history and extent of disability on official documents." (Compl. at ¶ 53.) He further advised the OCRC that the OBWC's motion for declaration of overpayment and civil fraud regarding a Worker's Compensation claim was granted by the Industrial Commission. A hearing was held before a District Hearing Officer (DHO) for the Industrial Commission on August 10, 2005 regarding these issues. The DHO found that Ms. Williams had been working while receiving compensation from the OBWC. She appealed this decision, which was affirmed on December 5, 2005.

Ms. Williams devotes a considerable amount of her complaint to allegations that the defendants used the wrong job description for her position because the description suggested she had a greater knowledge of agency procedures relative to fraud. She claims further that, while "Mr. Rubino stated that the Plaintiff concealed the fact she had a Mary Kay business to OBWC[,] [t]he Defendant has omitted that the Ohio BWC in fact had knowledge of Plaintiffs' business and there

6

was no concealment." (Compl. at ¶ 63.) She also claims that Fred Schnitzpahn, "presented false and misleading statement[s] to the Ohio Civil Right Commission in an effort to conceal the fact that non-disabled employees are not similarly treated and are allowed to sell personal products during business hours; However [sic], non-disabled employees are not disciplined for these offenses." (Compl. at ¶ 64.)

*Standard of Review*

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss a claim under 28 U.S.C. §1915(e) if it fails to state a basis upon which relief can be granted, or if it lacks an arguable basis in law or fact.[4] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to section 1915(e).

*Civil Rights Violation Based on Disability*

This action lacks an arguable basis in law. To prevail in a civil rights action under 42 U.S.C. §1983, a plaintiff must plead and prove that the defendants, acting under color of state law, deprived the plaintiff of a right secured by the constitution and law of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Section 1983 alone creates no substantive rights; rather it is the means through which a

---

[4] A claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

plaintiff may seek redress for deprivations of rights established in the Constitution or federal laws. Baker v. McCollan, 443 U.S. 137, 144 n. 3 (1979). The statute applies only if there is a deprivation of a constitutional right. See e.g., Paul v. Davis, 424 U.S. 693, 699-701(1976); Baker, 443 U.S. at 146-47. Thus, "[t]he first inquiry in any § 1983 suit ... is whether the plaintiff has been deprived of a right 'secured by the Constitution and laws'" of the United States. Baker, 443 U.S. at 140.

Ms. Williams does not set forth any specific right of which the defendants have deprived her. At best, she is arguing a claim loosely within the parameters of the Equal Protection Clause. The Equal Protection Clause of the Fourteenth Amendment, which provides that "[n]o state shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1, and is essentially "a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985). Thus, the threshold element of an equal protection claim is disparate treatment. "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." Henry v. Metropolitan Sewer Dist., 922 F.2d 332, 341 (6th Cir.1990) (citation omitted).

Here, Ms. Williams claims that the defendants treated her disparately because she is disabled.[5] The difficulty with her conclusory assertion rests on the fact that "it is not sufficient to sustain jurisdiction that the pleading merely assert that conduct complained of violates constitutional rights. It must set forth facts from which the court can see that such rights have been violated. There

---

[5]Ms. Williams also peripherally claims discrimination based on age and retaliation. In order to sustain any claim that she was treated adversely, however, the court would need to accept that the defendants fired her in violation of the Constitution. As the court outlines later, Ms. Williams fails to state any claim based on a violation of her Constitutional rights under the Equal Protection Clause.

8

must be a 'federal question, not in mere form, but in substance, and not in mere assertion, but in essence and effect.'" Cuyahoga River Power Co. v. Northern Ohio T. & L. Co., 252 U.S. 388, 397(1920). In Little York Gold Washing & Water Co. v. Keyes, 96 U.S. 199, 202 (1877) the Court said: "The office of pleading is to state facts, not conclusions of law. It is the duty of the court to declare conclusions, and of the parties to state the premises.'" Cf. Hull v. Burr, 234 U.S. 712, 710(1914); Norton v. Whiteside, 239 U.S. 144, 147(1915).

The Equal Protection Clause protects against arbitrary classifications, and requires that similarly situated persons be treated equally. See U.S. CONST. AMEND. XIV; City of Cleburne, 473 U.S. at 439. To withstand Fourteenth Amendment scrutiny, where, as here, a statute does not interfere with a fundamental right or single out suspect classifications it must bear only a rational relationship to a legitimate state interest. See City of Cleburne, 473 U.S. at 440. Rather than a statute, it appears that OBWC's fraud policy is the focus of Ms. Williams's attack for equal protection purposes. While she does not argue that the policy violates her equal protection rights per se, she does claim that the defendants applied the policy in a discriminatory manner. When no suspect class or fundamental right is involved, the party challenging the legislation has a heavy burden in demonstrating that the legislation is irrational. Harrah Indep. School Dist. v. Martin, 440 U.S. 194,198 (1979) Ms. Williams has not met that burden in the instant case.

It is Ms. Williams's claim that she was terminated because, unlike non-disabled employees, she was not permitted to engage in any other form of employment. She consistently attempts to support her position by arguing that she knew of several OBWC employees who were involved in other forms of employment while working for the OBWC. It is her belief that she is similarly situated with these employees and that the OBWC discriminated against her because they

9

fired her for working during the time she was out of the office receiving disability compensation.

Ms. Williams is not similarly situated to non-disabled OBWC employees.  Unlike Ms. Williams, these non-disabled OBWC employees were not receiving temporary total disability compensation at the time they were allegedly working outside of the OBWC.  For obvious reasons, the defendants presumed Ms. Williams was unable to work because her physicians repeatedly advised the OBWC that she was entitled to remain out of the office and to receive disability compensation because of the physical limitations her disability imposed upon her.  There are no facts alleged that remotely describe intentional discrimination against Ms. Williams, as a disabled employee, based on the manner in which the OBWC enforced their fraud policy.  Thus, she has failed to state an equal protection claim and the complaint fails in its entirety.

Based on the foregoing, Ms. Williams's Motion to Proceed in forma pauperis is granted and her complaint is dismissed.  The court certifies that an appeal from this dismissal could not be taken in good faith.[6]

IT IS SO ORDERED.

Date: March 13, 2007                     s/ John R. Adams
                                         JOHN R. ADAMS
                                         UNITED STATES DISTRICT JUDGE

---

[2]  28 U.S.C. § 1915(a) (3) provides: "An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith."